Filed 1/29/14  P. v. Carter CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DWAYNE COLEMAN CARTER,<br><br>    Defendant and Appellant. | D062981<br><br><br><br>(Super. Ct. No. SCE319256) |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Reversed and remanded.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Dwayne Coleman Carter was charged with 13 counts of various theft and conspiracy offenses, and was represented by appointed counsel, when he entered into a plea agreement in July 2012.  (*People v. West* (1970) 3 Cal.3d 595.)  In

exchange for an indicated sentence of six years four months, Carter pleaded guilty to two counts of first degree residential burglary (counts 2 & 3), and to unlawfully taking or driving a vehicle with an enhancement for a prior conviction (count 4). (Pen. Code,[1] §§ 459/460 & 667.5(c)(21); 459; Veh. Code, § 10851, subd. (a); § 666.5, subd. (a).)

At the next two hearings, Carter's requests to withdraw his guilty plea, for a continuance to retain private counsel, or alternatively, to replace appointed counsel[2] or to allow him to represent himself at sentencing, were denied. (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).) Carter was sentenced according to the plea bargain. He requested and received a certificate of probable cause from the trial court. (§ 1237.5.)

On appeal, Carter contends the trial court erred and abused its discretion in denying his requests to bring a motion to challenge the validity of the guilty plea, either through counsel or in propria persona. Carter sought to argue that the plea bargain was invalid because he had not been correctly advised by his counsel or the court of the maximum sentence to which he was exposed, either on the total number of counts charged, or on the pleaded counts. He thus argues his consent to the plea bargain was ineffective, his requests to challenge it and to represent himself at sentencing were timely, and the trial court abused its discretion in denying him those opportunities. Further, to attack the merits of the judgment and sentence imposed, he contends the court incorrectly applied section 654 at sentencing, and that certain errors were made in imposing fines and restitution.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

In *People v. Miller* (2007) 153 Cal.App.4th 1015, 1024 (*Miller*), the court stated that for *Faretta* purposes, sentencing is regarded as a posttrial proceeding separate and distinct from trial. (See *Leversen v. Superior Court* (1983) 34 Cal.3d 530, 540 [posttrial proceedings include sentencing]; *People v. Winbush* (1988) 205 Cal.App.3d 987, 991 [defendant can make *Marsden* motion posttrial, either for sentencing or a new trial motion].)

Under all the relevant circumstances, we find the trial court abused its discretion when it denied Carter the right to bring a motion to withdraw his guilty plea, either through counsel or in propria persona. During the September and October 2012 sentencing hearings, the court should have recognized from Carter's requests (to substitute or relieve counsel or to represent himself at sentencing) that they raised obviously substantial issues on whether his guilty plea had been entered under an accurate advisement of his sentencing exposure, and the requests were made in a reasonably timely manner. Since the record shows the trial court, after holding the *Marsden* hearing, denied Carter a continuance to prepare to represent himself (while also stating it would have allowed him a continuance before sentencing if he were to retain private counsel), this decision represents an abuse of discretion in denying a reasonably timely *Faretta* request, under all these circumstances. (*Miller*, *supra*, 153 Cal.App.4th 1015, 1021-1022.)

We reverse the judgment of conviction with directions to allow further appropriate proceedings, which may include a hearing on Carter's motion to withdraw the guilty plea, and/or any renewed request for self-representation. Because of these conclusions, we

3

need not resolve the other sentencing issues that Carter has argued on appeal. (Pt. IV, *post*.)

I

*STANDARDS GOVERNING WITHDRAWAL OF GUILTY PLEA;*
*ISSUES PRESENTED*

"In all guilty plea and submission cases the defendant shall be advised of the direct consequences of conviction such as the permissible range of punishment provided by statute . . . ." (*Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605.) In *People v. McClellan* (1993) 6 Cal.4th 367, 374-376 (*McClellan*), the court decided the remedies, if any, that are to be afforded where the trial court, prior to accepting a guilty plea, failed to provide the defendant with complete and accurate advice concerning the direct consequences of such a plea. The Supreme Court explained that resolution of whether a guilty plea should be set aside on appeal requires consideration of these related, distinct legal principles: "(1) *The first principle* concerns the necessary advisements whenever a defendant pleads guilty, whether or not the guilty plea is part of the plea bargain. The defendant must be admonished of and waive his constitutional rights. [Citations.] . . . [T]he defendant must be advised of the direct consequences of the plea. [Citation.] [¶] (2) *The second principle* is that the parties must adhere to the terms of a plea bargain." (*Id*. at p. 375, italics added.)

A defendant moving to withdraw a guilty plea must demonstrate good cause. (§ 1018.) "It is the defendant's burden to produce evidence of good cause by clear and convincing evidence." (*People v. Wharton* (1991) 53 Cal.3d 522, 585; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

4

The appellate courts will reverse a trial court's decision on granting or denying a defendant's motion to withdraw a guilty plea where an abuse of the court's discretion has been clearly shown. (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796.) A trial court abuses its discretion if it "exercises discretion in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

Carter was not allowed to bring a motion to withdraw his guilty plea for purposes of litigating his assertion that he was led to mistakenly believe he was exposed to a maximum 20 year sentence on all counts, and that his potential sentence on the pleaded counts was 12 years, whereas the correct set of exposures was less in both respects (and those amounts are still disputed by the parties). On appeal, we examine the circumstances leading to that result: first, at the September 2012 sentencing hearing, and next, at the October 2012 proceedings which included a *Marsden* hearing and a denial of Carter's request to represent himself. We summarize the showings made at these various hearings and then evaluate the trial court's exercise of discretion in dealing with his appellate claims on these related legal issues.

II

*NEGOTIATIONS AND HEARINGS*

Since this appeal only addresses Carter's efforts to withdraw his guilty plea and to seek self-representation, and those issues are dispositive, we will omit the traditional statement of facts about the charged offenses. It is sufficient for us to note that Carter and a codefendant were charged with a total of 13 counts arising out of two residential

5

burglaries and an associated vehicle theft (car stolen from one of the burglarized homes), and resisting arrest. In a separate case, Carter was also facing a misdemeanor charge of driving under the influence of intoxicants (DUI).

At the July 2012 hearing, Carter (advised by appointed counsel George Cretton) entered into a plea agreement in order to mitigate his sentence, and he initialed a change of plea form, reflecting that the maximum sentence to which he was exposed on the pleaded counts was 12 years. The court indicated that sentence would be imposed for six years four months in state prison, although there was no stipulated sentence placed on the record. Carter responded to the court's questions, indicating that he understood the plea and was making it willingly. The other counts were stricken and the matter was continued for further proceedings and sentencing.

At the next hearing on September 4, 2012, Carter's appointed attorney notified the court that Carter had had discussions with various people and now believed that the negotiated sentence was excessive. He was seeking a continuance of sentencing, so that he could retain private counsel and move to withdraw his guilty plea. Carter told counsel and the court that he had not received copies of discovery material that he requested. The court continued the matter for 30 days, explaining that the proper procedure would be to hold a *Marsden* hearing at that time to inquire into the reasons that Carter wanted to replace trial counsel, or to allow his new retained counsel, if any, to appear. (*People v. Sanchez* (2011) 53 Cal.4th 80, 89-90 (*Sanchez*) [a trial court must conduct a *Marsden* hearing on whether to discharge counsel and appoint new counsel when the defendant indicates, after conviction, a desire to withdraw his plea on grounds of ineffective

6

assistance of current counsel, "only when there is 'at least some clear indication by defendant' . . . , that defendant 'wants a substitute attorney.' "].)

On October 5, 2012, the probation officer filed a report stating that although the change of plea form Carter had signed advised him his maximum exposure in the matter was 12 years, "it appears that his actual exposure is 8 years, 4 months." The probation officer recommended imposing a six-year four-month term on counts 2, 3, and 4. The trial judge read and signed the report.

At the October 5, 2012 hearing, defense counsel again informed the court that Carter wished to withdraw his plea and was seeking a *Marsden* hearing on removing trial counsel. The court held such a hearing, and the sealed transcript has been made part of this record. The court said that Attorney Cretton had told him during discussions that Carter's maximum exposure on the complaint was approximately 20 years. Carter presented a letter to the court expressing his reasons for his desire to replace his counsel and to withdraw his guilty plea. The letter was accepted as an exhibit to the motions.[3]

At the *Marsden* hearing, Carter stated that he had not received discovery material that he wanted, and he had been pressured and intimidated by his counsel into signing an "obviously excessive" plea bargain. The court said that Attorney Cretton's 20-year estimate of the maximum sentence to be received was probably accurate, and even if Carter did not get the maximum after trial, he would likely have received about 14 or 15 years, whereas the deal was for six years four months. Carter admitted that he was not 100 percent innocent, but continued to claim his codefendant was primarily responsible,

_____

[3] On our own motion, we augmented the record to include a copy of this letter, which was attached as an exhibit to the sentencing briefs and sealed by the trial court.

Carter had not received discovery material he needed to examine, and he believed that defense counsel was overly embroiled with the individual deputy district attorney and hence, was taking out his problems on Carter.

In response, defense counsel stated that discovery material had been delivered to Carter's mother's house, there was delay when Carter did not show up for court, and Carter's codefendant did not have much of a prior criminal history and was receiving a lighter sentence, and this was making Carter unhappy. The court concluded that there was nothing brought forward to support Carter's claims that he had been pressured into taking some plea, and denied the request to remove appointed counsel. Carter responded, "[there was] a big misunderstanding."

The court then proceeded with the rest of the motion hearing, and at Carter's request, read the letter Carter had written and accepted it as an exhibit to the hearing. The court noted that Carter was requesting another continuance to retain private counsel, or to evaluate whether certain pending legislation before the electorate in November would in any way impact his case. The court stated it could possibly grant a 60-day continuance for Carter to retain private counsel to review the case. However, the People objected and the court decided not to grant a continuance, but to proceed to sentencing.

Next, the court heard Carter's request for self-representation at sentencing pursuant to *Faretta, supra,* 422 U.S. 806. At the request of the court, Carter's appointed counsel assisted him in filling out a form for a *Lopez*[4] waiver of counsel. (*Faretta*, *supra*, 422 U.S. 806.) Defense counsel and the court then discussed the probation report's

---

4     *People v. Lopez* (1977) 71 Cal.App.3d 568 (*Lopez*).

8

recommendation for concurrent versus consecutive sentencing on the count of car theft, and the prosecution did not object to a finding that the vehicle theft was factually part of one transaction at one of the burglarized houses. (§ 654.) The court modified the probation report's recommendation accordingly.

After receiving the completed waiver of counsel form, which (erroneously) recites that Carter was exposed to a maximum sentence of 21 years 4 months on the pleaded counts, the court questioned Carter about it and made a finding that he was capable of self-representation. The court next ruled that the request was timely only if Carter were prepared to immediately represent himself at sentencing, but if he needed a continuance for sentencing, then the request at the commencement of this sentencing hearing would be denied as untimely, because the People and the court were prepared to proceed, and there had been one continuance already (from September). The court did not expressly ask for Carter's consent to proceed in pro. per.

Once the request for self-representation was denied, Attorney Cretton remained as counsel of record, and the court immediately sentenced Carter pursuant to the plea agreement. The court ordered credit for time served, resolved the trailing misdemeanor DUI count, and ordered restitution as set forth in the probation report.

Carter appealed, requesting a certificate of probable cause on the grounds he did not get a fair sentence for various reasons, and stating, "I am asking the court to allow me to serve six years with one strike at 50-65% [of time served credit]." The trial court granted the certificate.

9

# III

## *EFFECT OF CARTER'S REQUESTS FOR RELIEF*

### A. Preliminary Issues

Taking this sequence of events as a whole, we apply accepted standards to determine if the trial court's decision to proceed on the plea bargain, without hearing a motion to withdraw the guilty plea, was an abuse of the court's discretion. (*People v. Superior Court* (*Giron*), *supra*, 11 Cal.3d 793, 796.) We examine the record on the legal advice Carter received, at various times, on both the maximum sentence exposure and the maximum pleaded counts exposure. We treat this determination on the motions, which affected Carter's constitutional rights, as presenting mixed questions of law and fact. (*People v. Cromer* (2001) 24 Cal.4th 889, 901 (*Cromer*); *People v. Louis* (1986) 42 Cal.3d 969, 984-985 (*Louis*).) In such a case," the first inquiry is a matter of determining the historical facts"; and second, "application of an objective, constitutionally based legal test to the historical facts." (*Cromer*, *supra*, at p. 900.) We independently review the trial court's application of legal standards to the established facts. (*Id*. at p. 901.)

At the outset, we disagree with the People's assertion that Carter has forfeited any claim on appeal that he was misadvised about his maximum possible custody commitment, by failing to so object before sentencing. (See *People v. Hester* (2000) 22 Cal.4th 290, 295 [for the proposition that Carter accepted a plea bargain and thus waived any challenge to section 654 rights]; Cal. Rules of Court, rule 4.412(b) [agreement to sentence abandons section 654 claim].) However, this record does not show that Carter

stipulated to any precise prison term, but rather shows that only an indicated sentence was offered.

In any case, the whole point of Carter's appeal is that he did not object because he was misadvised in that precise respect.  He was entitled to rely on his counsel's evaluation of the offered plea bargain.  (*In re Alvernaz* (1992) 2 Cal.4th 924, 933.)  Carter has sufficiently demonstrated that he might have acted differently if apprised of the true exposure, thus showing prejudice in accepting this deal.  (See *McClellan*, *supra*, 6 Cal.4th 367, 378 [where a trial court misadvises a defendant entering a plea of guilty about the consequences of the plea, the defendant must show prejudice from the error].)  Moreover, the grounds he stated in applying for the probable cause certificate were appropriately broad.  (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178-1180.)

B.  Differing Estimates in Record About Potential Custody Consequences of Plea

As of the time of the plea in July, the record is somewhat unclear, but it is essentially not now disputed that Carter's appointed counsel told him that he faced a term of approximately 20 years in prison if he went to trial on all 13 charges and then received the maximum possible sentence.  On his plea form, a maximum exposure of 12 years for the three guilty plea charges was stated.  It is also essentially not disputed that defense counsel's calculation did not sufficiently consider the effects of section 654 on these closely related charges.

On the October 2012 *Faretta* waiver document, after a partial list of charges to which he was pleading guilty, Carter listed the maximum punishment to be imposed on conviction of those counts as 21 years 4 months.

In the October 2012 probation report, the officer states that Carter was mistakenly told his exposure on the pleaded counts was a maximum of 12 years, but the actual exposure was calculated there at eight years four months.

In the opening and reply briefs on appeal, Carter estimates the maximum sentence on the pleaded counts was seven years four months (allowing for the operation of § 654). Carter's estimate of the maximum exposure on all counts is now placed at nine years.

In the respondent's brief, the People calculate the maximum sentence on all counts was at least 12 years (not 20). On the pleaded counts, the People apparently adhere to this 12-year maximum as well, as had been stated on the change of plea form.

All of this disagreement in the record on the terms Carter faced cannot and need not be resolved at this time, but it does bolster his position that he entered into the plea based on misunderstandings about both of his maximum potential sentences, on all counts and on his pleaded counts as well.

C.  Issues at the October 5, 2012 Hearing; Self-Representation Request; Timeliness

At the outset of the October 2012 hearing, Carter again requested to withdraw his plea. The court gave him the opportunity to raise issues on whether there were any grounds to replace counsel. "[I]f the defendant makes a showing during a *Marsden* hearing that his right to counsel has been 'substantially impaired' [citation], substitute counsel must be appointed as attorney of record for all purposes." (*Sanchez, supra*, 53 Cal.4th 80, 90.) Such a *Marsden* motion ruling is vested in the sound discretion of the trial court and will not be overturned on appeal in the absence of a clear showing the trial court abused its discretion. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.) It is not

12

appropriate, however, to decide this case solely upon the *Marsden* issues, which were only part of the overall picture.

During the *Marsden* hearing, the trial court reiterated that defense counsel had reported the complaint carried a maximum term of "about 20 years." The trial court accepted the defense assessment of "about 20 years" as probably correct, and stated that even if Carter did not receive that maximum after trial, he would probably receive a sentence in the 14 or 15-year range, or more than the current plea agreement. However, the record now suggests that the maximum on all counts would have been more like 12 years, so the 14 or 15-year maximum being discussed was not supported by the record. This *Marsden* ruling is thus not fully supported by the record.

Turning to the related issue of self-representation under *Faretta*, Carter's right to represent himself was subject to the requirements that his decision to do so was voluntarily and intelligently made, and reasonably timely. (*Faretta*, *supra*, 422 U.S. 806; *People v. Mayfield* (1997) 14 Cal.4th 668, 809.) An erroneous denial of a timely, well supported request is reversible per se. (*People v. Dent* (2003) 30 Cal.4th 213, 217.)

On timeliness of a *Faretta* request, it is established that "once a defendant has chosen to proceed to trial represented by counsel, the decision whether to permit the defendant to discharge his attorney and represent himself *is left to the trial court's sound discretion*." (*Miller*, *supra*, 153 Cal.App.4th at p. 1022, italics added, citing *People v. Windham* (1977) 19 Cal.3d 121, 128 (*Windham*).) In *Miller*, the court analyzed the discretionary factors for deciding motions for self-representation made during trial, but in terms of motions that were made before sentencing. The court found that the adverse

13

consequences of a potential disruption of proceedings already in progress "simply does not apply to sentencing hearings, which are separate proceedings from the trial and occur after the trial has been completed. This is not to say that every request for self-representation at sentencing will be timely. Much as a request to represent oneself at trial must be made a reasonable time before trial commences, the request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing." (*Miller, supra,* at pp. 1023-1024.)

In exercising its discretion on an untimely *Faretta* request, the court should consider such factors as the "quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham*, *supra*, 19 Cal.3d 121, 128-129.) None of these factors in this record shows an extremely problematic case that would have weighed against granting the *Faretta* request. Rather, the trial court was made aware there were substantial questions about the quality of the legal representation Carter had received, and the proceedings were not unduly lengthy or well advanced at this stage. Carter had been in custody since March, pleaded guilty in July, and challenged the plea in September and October 2012. Any delay involved in allowing a motion to withdraw the plea, or for preparation for sentencing, could have been easily managed, but the trial court mistakenly ignored its discretionary obligation to do so here.

Overall, Carter has shown enough evidence of good cause to support the making of a challenge to the plea. (*People v. Wharton*, *supra*, 53 Cal.3d 522, 585.) His requests

14

to withdraw his plea, for reasons related to asserted problems with his legal representation, were potentially meritorious and were raised as soon as possible after the plea and during proceedings and preparation for sentencing. Sentencing had not commenced as scheduled in September 2012, because the trial court agreed to wait 30 days to see if Carter could retain private counsel. The court had "some clear indication by defendant" that he wanted a substitute attorney, and for reasons related to the validity of the plea. (*Sanchez, supra,* 53 Cal.4th 80, 89-90.)

We are troubled that the trial court stated before the *Marsden* hearing that it would have allowed a continuance for private counsel to be obtained, but it later effectively disallowed a sentencing continuance for this obviously unprepared pro. per. defendant, who consistently had tried to bring potential problems with the plea to the court's attention, since shortly after the change of plea hearing. Instead, immediate sentencing was required. Although a request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing, this October 2012 sentencing hearing was being combined with closely related requests for relief, all based on Carter's protests about the validity of the plea and the information he was provided. (*Miller*, *supra*, 153 Cal.App.4th at pp. 1023-1024; *Sanchez, supra*, 53 Cal.4th 80, 90 [issue is whether his right to counsel had been "substantially impaired"].)

Once Carter's *Marsden* request to relieve appointed counsel was denied, he apparently made the *Faretta* request as a last resort. When the trial court took his completed waiver of counsel form, it disregarded an obvious error in it, reciting that he was exposed to a maximum sentence of 21 years 4 months on the pleaded counts. On

15

review of questions about plea withdrawal, the appellate court "must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) But here, the terms of the plea agreement in this case and its indicated sentence were evidently arrived at under material factual misinterpretations. Carter's level of exposure to custody on all counts arguably ranged between 9 and 20 years, or on the pleaded counts, the range was arguably between seven years four months or 12 years.

Applying the relevant legal standards to the established facts, we deem the *Faretta* request to be a reasonably timely one, because it was made on the background of the interrelated issues being considered in September and October 2012, prior to the actual sentencing decisions. (See *Louis*, *supra*, 42 Cal.3d 969, 984-985.) At this juncture, we do not address whether there is a factual basis for the plea or whether it may stand, but merely decide that this trial court decision effectively denying any hearing on a motion to withdraw the plea is reversible, as an abuse of discretion. (*People v. Shaw*, *supra*, 64 Cal.App.4th 492, 496.) The record does not show the trial court had an adequate basis to find that Carter's guilty plea was knowing, intelligent, and voluntary, in light of the multiple errors regarding the consequences of possible convictions, whether by trial or by plea.

IV

*REMAINING APPELLATE ISSUES; REMAND*

In light of the above conclusions, we decline to address potential issues regarding sentencing and the imposition of fines and fees.  Those matters can be addressed if appropriate on remand.

DISPOSITION

The judgment is reversed and the matter is remanded for such further proceedings as may be appropriate.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.